IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SARA WILSON CELONA,<br>    Plaintiff,<br><br>v.<br><br>DAVID J. SCOTT,<br>*in his official capacity as*<br>Pepperell Chief of Police,<br>    Defendant. | )<br>)<br>) Civil Action No: 1:15-CV-11759-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now comes the plaintiff, Sara Celona, by and through undersigned counsel, and submits her Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment.

Dated: December 8, 2015

Respectfully submitted,

Sara Celona,
By Her Attorney,

/s/ J. Steven Foley
J. Steven Foley
11 Pleasant St #100
Worcester MA 01609
BBO: 685741
508-754-1041
508-739-4051 (fax)
JSteven@attorneyfoley.com

TABLE OF CONTENTS

PRELIMINARY STATEMENT 1

STATEMENT OF FACTS 2

SUMMARY OF ARGUMENT 2

ARGUMENT 3

I. DEFENDANT HAS VIOLATED CELONA'S DUE PROCESS RIGHTS 3

II. THE SECOND AMENDMENT PROTECTS A FUNDAMENTAL RIGHT TO POSSESS A HANDGUN 3

III. A LICENSE TO CARRY FIREARMS IS REQUIRED TO POSSESS A HANDGUN IN MASSACHUSETTS 4

IV. MASSACHUSETTS LAW DENIES LICENSES TO PROHIBITED PERSONS 5

V. REQUIREMENT FOR CERTIFIED COURT DOUCMENTS TO PROVE A CONVICTION 6

VI. COSTS AND ATTORNEY'S FEES 7

VII. CONCLUSION 8

TABLE OF AUTHORITIES

Cases

Chardin v. Police Com'r of Boston, 465 Mass. 314 (2013)  4

Com. v. Gouse, 461 Mass. 787 (2012)  4

Com. v. Ramirez, 555 N.E.2d 208 (1990)  4

Com. v. Seay, 383 N.E.2d 828 (1978)  4

Daniels v. Williams, 474 U.S. 327 (1986)  7

District of Columbia v. Heller, 128 S. Ct. 2783 (2008)  4

Graham v. Conner, 490 U.S. 386 (1989)  7
Greene v. McElroy, 360 U. S. 474, 496 (1959)  3

Hightower v. City of Boston, 693 F.3d 61, 61-62 (1st Cir. 2012)  4

Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007)  3

Mathews v. Eldridge, 424 U.S. 319, 333 (1976)  3

McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 (2010)  4

Mitchum v. Foster, 407 U.S. 225 (1972)  7

Monell v. Soc. Servs. of N.Y., 436 U.S. 658 (1978)  7

Monroe v. Pape, 365 U.S. 167 (1961)  7

Parratt v. Taylor, 451 U.S. 527 (1981)  7

Whitley v. Albers, 475 U.S. 312 (1986)  7

Statutes

8 U.S.C. § 1229a  6

42 U.S.C. § 1983  7

M.G.L. c. 90 § 24  6

M.G.L. c. 94C  1

M.G.L. c. 140, § 129B                                                        4

M.G.L. c. 140, § 131                                                         1,5

M.G.L. c. 140, § 131A                                                        4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

The Defendant enforces Massachusetts General Law, Chapter 140, Section 131, which is the process under which residents of Massachusetts must seek a license from the state to own, posses, and carry handguns. In order to qualify for a License to Carry in Massachusetts, one must pass a background check to insure he or she is not disqualified from having a license to carry.

This case challenges the process used to determine if one is disqualified from obtaining a license to carry, the due process requirements of that determination, and the burden of proof on the licensing authority to determine that one is disqualified from exercising a fundamental right protected by the Bill of Rights.

**STATEMENT OF FACTS**

Plaintiff Sara Celona wishes to possess and carry a handgun for self-defense. In pursuit of that wish, she submitted an application to the Defendant for a License to Carry Firearms on March 25, 2014. SMF 2. On March 31, 2014, Defendant Scott denied Celona's application, stating that she was disqualified due to a violation of a law regarding the use, possession or sale of a controlled substances, as defined in M.G.L. Chapter 94C, Section 1 SMF 4. After inquiry, Celona learned that the denial was based on a "NCIC" check that indicated Celona had been convicted of possession of marijuana in Vermont in 1994. SMF 5.

Celona requested a copy of the NCIC report from Scott, however Scott stated that he was not permitted to give her that information. SMF 6.

Celona explained that she had been charged with possession of marijuana in 1994, and that the record had been expunged. She obtained a letter form the Vermont Superior Court

1

indicating that there were no records or cases for her in that court. SMF 9  Nevertheless, Scott refused to issue the license, leaving Celona's only option to appeal in the Ayer District Court.

Celona filed a petition for judicial review in the Ayer District Court, and a hearing on the matter was held. SMF 19. Defendant Scott maintained that his information indicated that Celona had been convicted of possession of marijuana, and that he was unable to issue the license. SMF 11.  Scott read portions of the NCIC report into evidence, but would not provide a copy to Celona. SMF 12. The judge agreed that he was not permitted to give her access to that information.

Through discovery, the Defendant provided Celona with a copy of the NCIC report on which he based his denial. This record of this twenty year old charge clearly states: COURT DISPOSITION PENDING and CONVICTION STATUS UNKNOWN. SMF 13

## SUMMARY OF ARGUMENT

Defendant actions failed to afford Celona the basic aspects of due process required by the Constitution. Scott based the denial on an obviously inaccurate record, and gave Celona no mechanism with which to dispute the allegation. Scott effectively shifted the burden to Celona and pushed upon her the impossible task of proving that she had never been convicted of a disqualifying crime.

This lack of due process cascaded into a violation of Celona's fundamental Second Amendment Right to keep a handgun, as handgun possession is illegal in Massachusetts without a valid License to Carry Firearms.

**ARGUMENT**

I.  **DEFENDANT HAS VIOLATED CELONA'S DUE PROCESS RIGHTS.**

At its core, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation and internal quotation marks omitted). Establishing a due process violation is logically straightforward: a plaintiff must first identify a liberty or property interest protected by the Due Process Clause, and then show "that the defendants, acting under color of state law, deprived it of that [protected] interest without constitutionally adequate process." Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007)

Here, the clear due process violations is the inability of Celona to confront the evidence used against her. "Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." Greene v. McElroy, 360 U. S. 474, 496 (1959).

Celona had no opportunity to show that the evidence used against her was untrue, and never even had the opportunity to examine the evidence, which would have exposed the incomplete nature of the supposed evidence and the fatal phrase "CONVICTION STATUS UNKNOWN"

II.  **THE SECOND AMENDMENT PROTECTS A FUNDAMENTAL RIGHT TO POSSESS A HANDGUN**

It is now well established that the Second Amendment protects an individual's right to possess a handgun in the home for self-defense. <u>District of Columbia v. Heller</u>, 128 S. Ct. 2783 (2008), <u>McDonald v. City of Chicago, Ill.</u>, 130 S. Ct. 3020 (2010). Here, Celona simply wishes to exercise that right, as protected by the Second Amendment, and defined by <u>Heller</u> and <u>McDonald</u>, to keep a firearm for the purposes of self defense.

## III.   A LICENSE TO CARRY FIREARMS IS REQUIRED TO POSSESS A HANDGUN IN MASSACHUSETTS

Chapter 180 of the Massachusetts Acts of 1998, made major changes to the law which were, for the most part, the law in effect when this action arose. One major change was that you could no longer possess a handgun in your home under an FID card. The new M.G.L. c. 140, § 129B(6)(ii) only allowed possession of a handgun with an FID Card on a licensed gun range.

Although *dicta* in some recent cases says that a handgun may be possessed in one's home on an FID card, see, e.g., <u>Com. v. Gouse,</u> 461 Mass. 787, 799-800 n.14 (2012) or <u>Chardin v. Police Com'r of Boston</u>, 465 Mass. 314, 315 n.5 (2013), this is clearly wrong. The parties before those courts apparently relied on cases interpreting the pre-1998 law (see, e.g., <u>Hightower v. City of Boston</u>, 693 F.3d 61, 61-62 (1st Cir. 2012) cited <u>Com. v. Ramirez,</u> 555 N.E.2d 208, 211 (1990) and <u>Com. v. Seay,</u> 383 N.E.2d 828, 831 (1978) which refer to the law repealed in 1998). After 1998 a gun purchased on the permit to purchase, M.G.L. c. 140, § 131A, had to be kept at a licensed gun range, not in your home.

> **A firearms identification card shall not entitle** a holder thereof to possess: (i) a large capacity firearm except under a Class A license issued to a shooting club as provided under section 131 or under the direct supervision of a holder of a Class A license issued to an individual under section 131 at an incorporated shooting club or a licensed shooting range; or (ii) **non-large**

4

> **capacity firearm or large capacity rifle or shotgun except under a Class A license**

The only way a Massachusetts resident can possess a handgun in the home for self-defense, as protected by Heller and McDonald is to apply for, and receive, a License to Carry Firearms.

## IV. MASSACHUSETTS LAW DENIES LICENSES TO PROHIBITED PERSONS

Massachusetts restricts a license to carry to those who are not considered prohibited persons. Under the licensing statue, M.G.L. c. 140, § 131, a prohibited person is any person who

> (i) has, in a court of the commonwealth, been convicted or adjudicated a youthful offender or delinquent child, both as defined in section 52 of chapter 119, for the commission of (A) a felony; (B) a misdemeanor punishable by imprisonment for more than 2 years ; (C) a violent crime as defined in section 121; (D) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; (E) a violation of any law regulating the use, possession or sale of a controlled substance as defined in section 1 of chapter 94C including, but not limited to, a violation of said chapter 94C; or (F) a misdemeanor crime of domestic violence as defined in 18 U.S.C. 921(a)(33);

> (ii) has, in any other state or federal jurisdiction, been convicted or adjudicated a youthful offender or delinquent child for the commission of (A) a felony; (B) a misdemeanor punishable by imprisonment for more than 2 years; (C) a violent crime as defined in section 121; (D) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; (E) a violation of any law regulating the use, possession or sale of a controlled substance as defined in said section 1 of said chapter 94C including, but not limited to, a violation of said chapter 94C; or (F) a misdemeanor crime of domestic violence as defined in 18 U.S.C. 921(a)(33);

These paragraphs are identical but for the jurisdiction of the conviction, ie "in a court of the commonwealth" vs "in any other state or federal jurisdiction". The issue here

is the conviction in any other state or federal jurisdiction, and what is the correct standard of proof of such a conviction.

The information relied on by the Scott shows that there was a charge in the state of Vermont, but that same document shows that the case is still pending after twenty years. The document also shows an unknown conviction status. This would seem to indicate that, at best, the information is stale. A charge is not the same as a conviction, and a case pending for twenty years stretches the bounds of reality. The information relied on by the Defendant to deny the license, is clearly deficient, a deficiency that would have been brought to light had the Plaintiff had the opportunity to examine that evidence closely.

## V. REQUIREMENT FOR CERTIFIED COURT DOUCMENTS TO PROVE A CONVICTION

Under Massachusetts law, in order to prove a subsequent offense of operating under the influence of alcohol, a prosecutor must use certified copies of court or prison documents of the prior offense. M.G.L. Chapter 90 Section 24 (4). He may not rely on a NCIC report from the FBI. That report may lead the prosecutor to the correct agency to obtain the certified copies required to prove the prior offense, but he cannot rely on the report itself to prove the conviction.

Under Immigration law, in order to deport an alien who has been convicted of an aggravated felony, the government must produce certified court or prison documents attesting to the conviction of the felony. 8 U.S.C. § 1229a(3)(B). The prosecutor may use the NCIC report as an investigative tool to determine if records exist showing the alien has been convicted of an

aggravated felony, but he cannot rely on the NCIC report in court to prove a conviction in an immigration proceeding.

In the instant case, the Plaintiff was denied her fundamental right to possess a firearm based solely on some of the contents of a NCIC report, information that is insufficient to prove a prior offense under Massachusetts law or insufficient to prove an aggravated felony under Federal Law. Surely, a Fundamental Right should be offered greater protection than an administrative proceeding in immigration court or a traffic offense in the state court.

## VI.   COSTS AND ATTORNEY'S FEES

42 U.S.C. § 1983 provides a remedy for the deprivation of "rights, privileges, or immunities" guaranteed by the constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Mitchum v. Foster, 407 U.S. 225 (1972). No specific intent to deprive a person of a civil right is required to state a cause of action under Section 1983. Monroe v. Pape, 365 U.S. 167 (1961), overruled on other grounds by Monell v. Soc. Servs. of N.Y., 436 U.S. 658 (1978). However, the plaintiff does have to establish the intent required to prove that a particular constitutional right has been violated. For example, violation of the Fourth Amendment by excessive force in an arrest requires only unreasonable force, while violation of the Eighth Amendment in use of force on a prisoner requires malice. Graham v. Conner, 490 U.S. 386 (1989); Whitley v. Albers, 475

U.S. 312 (1986).

Here, the plaintiff has shown that her rights have been violated in two separate and distinct ways. First, her right to due process was violated when she was denied the opportunity to

challenge the evidence used against her, and second when her right to possess a handgun as protected by the Second Amendment was denied.

The plaintiff is entitled costs and attorney's fees as a direct result of the violation of her civil rights.

### VII. CONCLUSION

For all the reasons stated, the plaintiff respectfully requests the court issue a summary judgment in her favor.

Dated: December 8, 2015

                                        Sara Celona,
                                        By Her Attorney,

                                        /s/ J. Steven Foley
                                        J. Steven Foley
                                        11 Pleasant St #100
                                        Worcester MA 01609
                                        BBO: 685741
                                        508-754-1041
                                        508-739-4051 (fax)
                                        JSteven@attorneyfoley.com

### CERTIFICATE OF SERVICE

I, J. Steven Foley, hereby certify that this document filed through the ECF system was served on all counsel of record.

Date: December 8, 2015                          /s/ J. Steven Foley
                                                      J. Steven Foley