UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SARA WILSON CELONA, <br><br> Plaintiffs <br><br> v. <br><br> DAVID J. SCOTT, in his official capacity as Pepperell Chief of Police, <br><br> Defendant. | Case No: 15-cv-11759-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                               **April 8, 2016**

**I.   Introduction**

Plaintiff Sara Wilson Celona ("Celona") brings claims pursuant to 42 U.S.C. §§ 1981 and 1983 against Defendant David J. Scott ("Chief Scott"), in his official capacity as the Pepperell Chief of Police, for violations of the Second and Fourteenth Amendments.  D. 1.  The dispute stems from the Pepperell Police Department ("Pepperell Police") denying Celona's application for a license to carry a firearm ("LTC") pursuant to Mass. Gen. L. c. 140, § 131, D. 1 ¶¶ 12-14, Ex. A (denial of LTC), which, upon reapplication, was granted, Tr. at 21 (Feb. 25, 2016 motion hearing).  Celona alleges violations of her Second Amendment rights for failure to issue a LTC (Count I) and for failing to accept certified court documents in support of her LTC application (Count IV).  Celona also alleges violations of her due process rights for failure to disclose

1

evidence that served as the basis for the denial of her LTC application (Count II) and for shifting the burden of proof to Celona to demonstrate that she was qualified for a LTC (Count III).

Celona requests an injunction requiring Chief Scott to issue her a LTC, D. 1 at 9, ¶ 1, a declaratory judgment that Chief Scott's denial of Celona's LTC application was a violation of her Second and Fourteenth Amendment rights, id. ¶ 2, a declaratory judgment requiring licensing authorities to obtain certified court documents to prove a disqualification for a LTC, id. ¶ 3, a permanent injunction restraining Chief Scott from denying a LTC license based on a disqualification without certified court documents, id. ¶ 4, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, id. ¶ 5. Celona does not seek monetary damages. Tr. at 34-35; see D. 1 at 9.

Celona has moved for summary judgment. D. 19. For the reasons stated below, the Court does not have subject matter jurisdiction and DENIES the motion on that basis.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute on any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." García-González v. Puig-Morales, 761 F.3d 81, 87 (1st Cir. 2014) (internal quotation marks and citation omitted). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Rosciti v. Ins. Co. of Pennsylvania, 659 F.3d 92, 96 (1st Cir. 2011). Once that burden is met, the non-moving party may not rest on the allegations or denials in his pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which [he] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [his] favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court

2

"view[s] the record in the light most favorable" to the non-moving party, "drawing reasonable inferences" in the non-moving party's favor. Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III. Factual Background

The following facts are derived from the record and are undisputed unless otherwise noted.

On March 25, 2014, Celona submitted a LTC application with the Pepperell Police indicating that she had never been convicted in any state or federal jurisdiction for a violation of any law regulating the use, possession or sale of controlled substances as defined in Mass. Gen. L. c. 94C, § 1. D. 19-2 at 2 (application for LTC). On March 31, 2014, the Pepperell Police denied Celona's application because of her 1994 conviction for possession of marijuana in Vermont. D. 19-1 ¶ 4 (Celona's statement of material facts); D. 1, Ex. A (LTC denial). Celona appealed the denial to the Ayer District Court. D. 1-4 at 2 (Ayer District Court decision).

At the appeal hearing held on December 30, 2014, Celona, appearing *pro se*, D. 1-2 at 2 (Ayer District Court transcript), presented to the court and Chief Scott, a letter from the Vermont Superior Court, Windsor Criminal Division, id. at 5-7. The letter, dated March 26, 2014, states that "there are no records or cases for Ms. Wilson/Celona in the VT Superior Court, Windsor Criminal Division," D. 1-3. Celona indicated that, prior to the hearing, she spoke with Chief Scott over the phone regarding the denial of her application and read the letter to him. D. 1-2 at 8. During that phone conversation, Chief Scott indicated that the marijuana possession charge came up on Celona's Interstate Identification Index report ("Triple I" report), but he refused to provide her any portion of the report. Id. at 8-9. The court noted that the Triple I report cannot

be given out. Id. at 9.[1] Based on the court's questioning, Chief Scott stated that the Triple I report included an arrest case number for Celona's possession of marijuana charge and listed the Drug Enforcement Agency ("DEA") in Burlington, Vermont as the relevant agency address. Id. at 10; D. 19-3 (Celona's Triple I report). The Triple I report does not appear to have been introduced as an exhibit before the court. D. 1-4 at 2. Celona stated, in response to a question by the court, that she had not checked with the DEA regarding the charge. D. 1-2 at 10.

As to the Vermont charge, Celona explained that she was arrested when her boyfriend in California mailed marijuana to her roommate and that she pleaded to attempted possession of marijuana. Id. at 13. In response to the court's questioning, Celona stated that she indicated on her LTC application that she had never been convicted of a violation relating to a regulated substance because she believed the conviction was expunged. Id. at 13-14. Chief Scott explained that, in his experience, many LTC applicants believed their charges were expunged in other states, but those charges still appeared on a Triple I report. Id. at 14. Chief Scott further explained that such an out-of-state charge, even if expunged, statutorily disqualified Celona from an LTC. Id. Celona, an avid hunter who also shoots competitively, id. at 11, asked if she could apply for a Firearms Identification ("FID") card, id. at 15-16. Chief Scott indicated she could submit a separate application while the appeal of her LTC was pending. Id. The court advised Celona to do so, to which she agreed. Id. at 17. At the conclusion of the hearing, the court noted that Celona's charge appeared to be a disqualifying event to obtain a LTC, but took the matter under advisement. Id. at 16.

By Memorandum and Order dated January 5, 2015, the Ayer District Court affirmed the denial of Celona's LTC application. D. 1-4. The court recognized that pursuant to Mass. Gen.

---

[1] See 28 CFR § 20.33 (describing circumstances in which "[c]riminal history record information contained in the III System and the FIRS may be made available").

L. c. 140, § 131, a district court may direct that a LTC be issued if "there was no reasonable ground for denying . . . such license and that the petitioner is not prohibited by law from possessing same." Id. at 3; see Mass. Gen. L. c. 140, § 131(f). The court explained that Mass. Gen. L. c. 140, § 131(d)(i)(E) disqualifies a person who has violated any law regulating the possession of a controlled substance from being issued a LTC and that, based on the record before the court, Celona had a 1994 criminal violation in Vermont involving marijuana possession. Id. The court noted that Celona does not dispute involvement with the charge, but believes it was dealt with in such a manner that there would be no record. Id. The court ultimately concluded that, based on the unknown disposition of the marijuana charge, Chief Scott had a reasonable basis to conclude that Celona was disqualified from obtaining a LTC. Id. Celona did not appeal the Ayer District Court's decision.[2]

In late October 2015, the Massachusetts Executive Office for Public Safety and Security ("EOPS") issued guidance in response to recent decisions from this Court regarding LTC applications (the "EOPS Guidance"). D. 23-1; see D. 21 at 4; D. 22 ¶ 2. The EOPS Guidance recognized that possession of less than one ounce of marijuana is no longer a disqualifier in Massachusetts for firearms licensing purposes, D. 23-1 at 2, and stated that an out-of-state conviction for simple possession of marijuana only, with no reliable indication that the quantity involved was more than an ounce, does not disqualify a LTC applicant, id. at 3. Thereafter, on December 27, 2015, Chief Scott allowed Celona to renew her LTC application, D. 23-2, and waived the application fee, Tr. at 21. Chief Scott asserted that, based upon the EOPS Guidance,

---

[2] The Court notes that Celona did not appeal the Ayer District Court's decision affirming Chief Scott's denial of her first LTC application. Indeed, "[f]urther judicial review is available in Superior Court pursuant to certiorari review per Mass. Gen. L. c. 249, § 4, and the Superior Court's determination may be appealed as of right. Mass. R. App. P. 4." See Hightower v. City of Boston, 822 F. Supp. 2d 38, 46 (D. Mass. 2011), aff'd, 693 F.3d 61 (1st Cir. 2012) (internal citation omitted).

Celona's renewed application will be reviewed "without regard to any allegation of the possession of marijuana in the State of Vermont which had previously been regarded as a disqualification for such [LTC] and the subject of this case." D. 22 ¶ 2. At the February 25, 2016 motion hearing before this Court, the parties indicated that Celona's renewed LTC application had been granted. Tr. at 21.

### IV.     Procedural History

Celona filed this action on May 2, 2015. D. 1. Celona has now moved for summary judgment, D. 19, and Chief Scott has opposed the motion, D. 21. The Court heard the parties on the pending motion and took the matter under advisement. D. 25.

### V.     Discussion

#### A.     Celona Has Not Shown that the Court Can Grant the Relief Sought

Chief Scott granted Celona's renewed application and issued her a LTC before the motion hearing held on February 25, 2016, D. 25, but after the motion was fully briefed on December 28, 2015, D. 23. At the motion hearing, counsel for Chief Scott asserted that the case is moot. See Tr. at 28; see Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.23 (1997) (noting that "[i]t is the duty of counsel to bring to the federal tribunal's attention, '*without delay*,' facts that may raise a question of mootness") (emphasis in the original) (citation omitted)). Counsel for Celona disagreed. While conceding that "there are no monetary damages" and Celona does not seek any in her complaint or otherwise, see Tr. at 34-35, counsel for Celona asserted that the action for injunctive relief and declaratory judgment is based upon the injury Celona incurred to her Second Amendment and due process rights when her first LTC application was denied and the time she was without a LTC. See id. at 22. Considering the relief Celona seeks, however, the case is moot and this Court lacks subject matter jurisdiction.

Based on the Article III case or controversy requirement, "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983) ("agree[ing] that the case has become moot during the pendency of this litigation"); see Duclerc v. Massachusetts Dept. of Correction, 10-cv-12050-DJC, 2012 WL 6615040, at *5 n.5 (D. Mass. Dec. 18, 2012) (recognizing that mootness is "'the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)'" (quoting Becker v. Fed. Election Comm'n, 230 F.3d 381, 386 n. 3 (1st Cir. 2000)). A case is moot when "intervening events make it impossible to grant the prevailing party effective relief." Pine Tree Med. Assocs. v. Sec'y of HHS, 127 F.3d 118, 121 (1st Cir. 1997) (citation and internal quotation marks omitted). A claim for injunctive relief is moot if the Court "cannot grant any effectual relief by ordering the injunction" because "the parties no longer have a legally cognizable stake in the outcome." In re Light Cigarettes Marketing Sales Practices Litigation, 271 F.R.D. 402, 422 (D. Me. 2010) (quoting N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 73 (1st Cir. 2006)) (internal quotation marks omitted)); see Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185, 191 (5th Cir. 2012) (stating that when "named plaintiffs will not benefit from a favorable ruling on the question implicating injunctive relief, we hold that th[e] question is moot as to them" (alteration in original) (citation and internal quotation marks omitted)). Similarly, a claim seeking a declaratory judgment is moot if there is no substantial controversy between the parties having adverse legal interests of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." See Am. Civil Liberties Union of Massachusetts v. U.S. Conference

of Catholic Bishops, 705 F.3d 44, 54 (1st Cir. 2013) (quoting Preiser v. Newkirk, 422 U.S. 395, 402 (1975)).

The Court cannot grant Celona the relief she seeks for the purported violations of her Second and Fourteenth Amendment rights.  First, the Court cannot grant Celona's request for an injunction requiring Chief Scott to issue her a LTC, D. 1 at 9, ¶ 1, because he has already done so, Tr. at 21.  Celona also requests a declaratory judgment and injunction requiring licensing authorities, including Chief Scott, to obtain certified court documents to prove any conviction disqualifying a LTC applicant, id. ¶¶ 3-4, but there is no longer a controversy between these parties and Celona would not benefit from the relief requested.  Although Celona's first LTC application was denied solely because she was disqualified based on the Triple I report indicating an out-of-state conviction for possession of marijuana—a charge she does not dispute, but asserts was expunged—she was ultimately granted a LTC following a change in the law regarding the legality of possession of less than one ounce of marijuana in the Commonwealth and in accordance with the EOPS Guidance regarding out-of-state convictions for similar offenses.  Regardless of whether Chief Scott is required to produce certified court documents in support of Celona's out-of-state conviction for marijuana possession, based upon the EOPS Guidance, such a conviction has not disqualified Celona from obtaining a LTC in Massachusetts that she has now obtained.  As such, there is no present controversy between Celona and Chief Scott and Celona would not benefit from either form of relief requested.  See Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016) (refusing to grant declaratory or injunctive relief to enjoin the future collection of tolls based on a change in the law prohibiting such collection and noting that plaintiff could seek such relief if and when the conduct at issue starts anew); see also Duclerc, 2012 WL 6615050, at *5 (refusing to issue declaratory judgment where the mere

possibility of future unconstitutional conduct does not create a live controversy). Here, as in Lewis, there is no reasonable expectation that the challenged action will recur after dismissal of this case where "the voluntary cessation [of the challenged action, namely the denial of the LTC] occurred for reasons unrelated to the litigation [namely, the issuance of EOPS guidance in light of a change in the law]." Lewis, 813 F.3d at 59 (rejecting application of the "voluntary cessation exception" to the mootness doctrine). Similarly, the "capable of repetition, yet evading review" exception to the mootness doctrine, Am. Civil Liberties Union of Massachusetts, 705 F.3d at 56-57, is inapplicable here where, as discussed above, there is no "reasonable expectation that the same complaining party would be subjected to the same action again." Id. at 57 (internal citations and quotation marks omitted).

Celona further seeks a declaratory judgment that Chief Scott violated her rights when denying her first LTC application. D. 1 at 9, ¶ 2. It is well established, however, that the "issuance of a declaratory judgment deeming past conduct illegal is . . . not permissible as it would be merely advisory." See Am. Civil Liberties Union of Massachusetts, 705 F.3d at 53 (internal citation omitted). Celona's request for reasonable attorneys' fees pursuant to § 1988, D. 1 at 9, ¶ 5, standing alone, "does not create a stake in the outcome sufficient to resuscitate an otherwise moot controversy." Diffenderfer v. Gomez-Colon, 587 F.3d 445, 452 (1st Cir. 2009) (citation omitted). Even then, it cannot be said that Celona is a "prevailing party" under § 1988 where the Supreme Court has rejected the so-called "catalyst theory" and Celona does not demonstrate that she prompted a "court-ordered chang[e] [in] the legal relationship" between her and Chief Scott by way of the EOPS Guidance or otherwise. See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 604 (2001) (internal quotation marks omitted).

9

Because the case is moot, the Court lacks subject matter jurisdiction and the case must be dismissed.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Celona's motion, D. 19, and dismisses the case.

**So Ordered.**

                                                /s/ Denise J. Casper
                                                United States District Judge